# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### November 1, 2012 Session

## STATE OF TENNESSEE v. NATHANAEL LITTLE

### Appeal from the Circuit Court for Chester County
#### No. 11-CR-13    Donald H. Allen, Judge

---

### No. W2011-02199-CCA-R3-CD  - Filed May 28, 2013

---

A Chester County jury convicted appellant, Nathanael Little, on count 1 for selling more than one-half ounce of marijuana, a Class E felony; on count 2 for delivering more than one-half ounce of marijuana, a Class E felony; on count 3 for possession of more than one-half ounce of marijuana with intent to sell, a Class E felony; on count 4 for possession of more than one-half ounce of marijuana with intent to deliver, a Class E felony; and on count 5 for possession of drug paraphernalia with intent to use, a Class A misdemeanor.  After appropriately merging some of the counts, the trial court sentenced appellant to an effective sentence of two years, eleven months, and twenty-nine days for two Class E felonies and one Class A misdemeanor.  On appeal, appellant argues that the trial court erred by failing to rule on his motion to suppress and by improperly sentencing him.  Upon review, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed

ROGER A. PAGE, J., delivered the opinion of the court, in which NORMA MCGEE OGLE, J., joined. JOSEPH M. TIPTON, P.J., filed a separate opinion concurring in part and dissenting in part.

Ryan B. Feeney, Selmer, Tennessee, for the appellant, Nathanael Little.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Brian Gilliam, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Procedural History and Facts

On February 22, 2011, the Chester County Grand Jury indicted appellant for several drug offenses. On April 6, 2011, appellant filed a motion to suppress evidence, in which he argued that his arrest was unlawful. The trial court set a hearing date for appellant's motion to suppress. However, on the date scheduled for the hearing, appellant declined to have the motion heard because he anticipated reaching a plea agreement with the State. Appellant and the State did not enter into a plea agreement, and the trial court held a jury trial for appellant's case on July 12-14, 2011.

### A. Jury Trial

Steve Davidson, a narcotics investigator for the Chester County Sheriff's Department, testified that he was working on August 26, 2010, and met Cody Tubbs when the Henderson Police Department arrested Mr. Tubbs during a traffic stop. Investigator Davidson explained that the police arrested Mr. Tubbs for possession of marijuana, and the narcotics investigators decided to question him because the quantity of marijuana he possessed was larger than what they normally saw in Chester County. During the interrogation, Mr. Tubbs gave a statement implicating appellant as his drug source. Narcotics officers arranged for Mr. Tubbs to make an undercover drug purchase from appellant. Mr. Tubbs successfully obtained two bags of marijuana from appellant. Thereafter, officers obtained a search warrant, which they executed at appellant's home a few hours later. Investigator Davidson testified that he participated in the execution of the warrant and that he recovered multiple individual bags of marijuana, marijuana seeds, scales, drug paraphernalia, cellular telephones, and cash. He outlined his department's procedure for collecting, packaging, and labeling evidence from the scene. In his testimony, he identified and verified the evidence recovered from appellant's house, which the court entered as exhibits.

On cross-examination, Investigator Davidson testified that Mr. Tubbs had enough marijuana in his vehicle when authorities arrested him to suggest that he was dealing in drugs. In gaining Mr. Tubbs' cooperation, Investigator Davidson admitted that he informed Mr. Tubbs of the "chance it could be better for him if the District Attorney agreed to help him out in court somewhere." Investigator Davidson explained that the investigators read Mr. Tubbs his rights. Mr. Tubbs agreed to talk with them and willingly cooperated without an attorney. He stated that Mr. Tubbs was released from jail on his own recognizance. After his release, Mr. Tubbs contacted appellant and successfully completed a drug transaction.

When questioned about his knowledge of Mr. Tubbs before his arrest, Investigator Davidson admitted that he had heard Mr. Tubbs' name mentioned in the context of his job as a drug investigator. He acknowledged that the investigators allowed Mr. Tubbs the use of his own vehicle, which the Henderson Police Department had seized, and that Mr. Tubbs remained free. Investigator Davidson stated that he "never had any personal dealings with [Mr. Tubbs]" or researched any sources to determine whether Mr. Tubbs was a truthful person. He agreed that "[he] had no more reason to believe [Mr. Tubbs] than to disbelieve him." Investigator Davidson acknowledged that many of the items recovered from appellant's home, such as the money, two cellular telephones, and sandwich bags, amounted to "circumstantial pieces of evidence." He admitted that the pipes and rolling papers that were recovered suggested personal use and did not indicate evidence of manufacturing or distributing narcotics.

On redirect examination, Investigator Davidson explained that the items listed on the search warrant, such as books and ledgers, were routine on every search warrant because that wording included everything that officers could possibly find. He testified that officers found a little more than a pound of what he believed to be marijuana in appellant's home packaged in at least sixteen bags.

During recross-examination, Investigator Davidson testified concerning the Tennessee Bureau of Investigation ("TBI") crime lab's analysis of the suspected marijuana and stated that the TBI only tested portions of it. Upon further questioning, he acknowledged that appellant did not receive any money from Mr. Tubbs at the arranged drug purchase. He also stated that he did not have a statement from Mr. Tubbs in which Mr. Tubbs admitted to being a drug dealer.

TBI Special Agent Forensic Scientist Melanie Johnson testified that she was assigned to the forensic chemistry section, which analyzed evidence suspected to be a controlled substance. The court accepted her as an expert in the field of drug analysis and identification. Agent Johnson outlined her procedure for weighing, testing, and documenting substances suspected to be marijuana. She identified 398.0 grams of the substance submitted in this case as being marijuana.

The court accepted Agent Carl Smith with the TBI's drug chemistry unit as an expert in drug analysis and identification. Agent Smith testified about his analysis of the substances submitted in this case. He stated that he weighed, tested, and identified 26.1 grams of the substance, which he determined was marijuana.

The court accepted David Holloway, a Special Agent Forensic Scientist with the TBI, as an expert in the field of drug analysis and identification. Agent Holloway testified that

he weighed, tested, and identified 50.04 grams of a substance that he determined was marijuana.

Cody Tubbs testified that he was acquainted with appellant and identified appellant in the courtroom. He testified that around August 2010 he purchased four ounces of marijuana from appellant for about $300.00. The police arrested Mr. Tubbs on August 26, 2010, for possessing two ounces of marijuana. Mr. Tubbs explained that while speaking with the police, he agreed to act as a confidential informant, return to appellant's house while wearing a recording device, and obtain additional marijuana.

He testified that when he arrived at appellant's house, appellant searched him for a "wire or a voice recorder or anything like that" but did not find the recording device that he had in his pants pocket. Mr. Tubbs stated that "[appellant] fronted [him] two ounces of marijuana to sell," which meant Mr. Tubbs would pay appellant for the marijuana after he sold it. Mr. Tubbs testified that he left appellant's residence with the marijuana in a laptop computer bag furnished by Investigator Davidson, went directly to the sheriff's department, and gave the bag and the recording device to the investigators.

On cross-examination, Mr. Tubbs stated that he had known appellant for about a year and a half and admitted selling marijuana until the time he was arrested. Mr. Tubbs testified that Investigator Davidson questioned him about the source of his marijuana and that Investigator Davidson told him that "there [was] a good chance that the charges [would] get reduced" if he revealed his source. Mr. Tubbs recounted his undercover visit with appellant wherein appellant searched him, questioned his carrying a different computer bag, and voiced concerns about his returning for more marijuana after such a short interval.

Upon redirect examination, Mr. Tubbs clarified that during the year and a half that he had known appellant, he had purchased marijuana from him "three to five times," and he had bought the marijuana in his possession upon arrest from appellant the day before his arrest. He testified that he knew appellant was a drug dealer and that he had witnessed appellant selling drugs to other people. He further testified that when he was arrested on August 26, 2010, he had been selling marijuana that appellant had been supplying for approximately a month or two.

On recross-examination, when Mr. Tubbs was asked if he was afraid when Investigator Davidson suggested that things would go badly for him in jail, he answered, "A little, yes. I guess." After the testimony of Mr. Tubbs, the State rested its case-in-chief.

Appellant called one witness, Jessie Stedman, who testified that he had known Mr. Tubbs for about eight years. He stated that he first purchased marijuana from Mr. Tubbs

about four years prior to trial. He further stated that he knew appellant and admitted smoking marijuana with Mr. Tubbs and appellant. Mr. Stedman said that on multiple occasions, he witnessed Mr. Tubbs trying to get marijuana from appellant, and appellant would reply, "I do not sell marijuana. . . . I use it. I smoke it, but I do not sell it."

On cross-examination, Mr. Stedman testified that he never asked Mr. Tubbs where he was getting his marijuana, stating, "That's not important to me. As long as I get mine, I don't want to know nobody's [sic] business." Mr. Stedman stated that appellant was one of his best friends and that appellant listened to his problems. He said, "When [appellant and I] stopped counselling [sic], we might go play basketball, talk a little bit more, come back[,] and get high." He testified that he had no contact with Mr. Tubbs since this incident, stating, "I just don't want to deal with him. . . . He was always my last person to go to because he is a kid." As to appellant, he responded, "I love him to death. The greatest guy I ever met."

Upon being asked on redirect examination about the reason for his testimony about appellant, Mr. Stedman replied, "Because he is my best friend and it's the truth." He was present during the discussion between appellant and Mr. Tubbs about Mr. Tubbs' obtaining the two pounds of marijuana and described the scene and conversation, stating,

> [Mr. Tubbs] c[a]me up and he was like, hey, I got this [new] connection[,] and we can get a lot of marijuana really cheap. They got to talking[,] and [Mr. Tubbs] was like I only have this much[,] and I was like I can give you $200[,] and can you give [me] a QP[1]? He was like, yeah, I'll add it on to my money so it will be less for me. That's pretty much it.

Mr. Stedman denied seeing appellant selling marijuana to anyone.

The State recalled Mr. Tubbs as a rebuttal witness. Mr. Tubbs remembered Mr. Stedman from middle school, but more recently, he recalled their being at a local basketball court where he and appellant sometimes played. He recounted appellant, Mr. Stedman and himself occasionally meeting at appellant's house "just hanging out and just smoking." Mr. Tubbs stated that he exchanged drugs for money with Mr. Stedman "maybe three or four or maybe five times" during the six-month period prior to this incident. He testified that his arrangement with Mr. Stedman was separate from any arrangement he had with appellant and that they never discussed any involvement with appellant.

---

[1] According to prior testimony, "QP" stands for quarter pound.

On cross-examination, Mr. Tubbs admitted selling marijuana to Mr. Stedman and being confused as to whether the marijuana was sold by him or through him from appellant. He also admitted that he had never seen Mr. Stedman purchase marijuana from appellant.

After hearing the evidence, the jury convicted appellant as charged.

B. Sentencing Hearing

Appellant testified that before this offense, he was an anger management counselor and assisted parents with parenting issues. He obtained both a bachelor's degree and a master's degree in counseling. Appellant stated that he had been using marijuana since he was thirteen years old. He said that he understood that his marijuana use was illegal and that the idea of a counselor using and selling marijuana was upsetting.

Appellant stated that his "decision to go outside of relying on [his] Savior to help [his] problems through using drugs was grossly out of the character that [he had] been displaying for the last decade." He admitted that he was convicted of DUI when he was a teenager. He further admitted that twelve years prior, he had been convicted of contributing to the delinquency of a minor, and he explained the facts underlying that conviction.

Appellant had stopped smoking marijuana for a short time but began smoking marijuana again after moving to Tennessee for school. He stated that he became afraid of purchasing small amounts of marijuana to use and explained, "I decided a really stupid decision was that if I got a large amount of marijuana then that would decrease the risk of me having go back and forth, travel with marijuana, make transactions, possibly even get robbed by drug dealers." Appellant said a couple of his friends, including Mr. Tubbs, "went in" on his decision to purchase a large quantity of marijuana. He further said Mr. Tubbs asked him for more marijuana after Mr. Tubbs had used his portion. Appellant admitted to selling and giving marijuana to his friends.

Appellant testified that money was tight in his household. He was married and had a two-year-old son at the time of sentencing. His wife did not work and did not have a driver's license. Appellant owed more than $75,000 in student loan debt, and he said his felony convictions in this case would prevent him from using his bachelor's degree as an educator and his master's degree as a counselor. He stated that several people in the community offered to employ him so that he could repay his debts if the court granted him an alternative sentence.

Robert Holmes, appellant's landlord, testified that he had known appellant for approximately two years. Appellant worked for him as a waiter after he was arrested. He

said he found appellant to be a person of good character and morals. Mr. Holmes did not approve of appellant's convictions but stated that if the court gave appellant a second chance, he could be a good, law-abiding citizen who would continue to work and repay his debts. He further stated that appellant could continue working for him if the court granted appellant an alternative sentence.

Larry Ivory , an employee at the Tennessee Children's Home and an evangelist with the Churches of Christ, testified that he had known appellant for approximately three years. He met appellant when appellant and his wife attended premarital counseling with him, and he performed their marriage ceremony. Mr. Ivory came to know appellant further when appellant attended his church and completed a counseling practicum at the Tennessee Children's Home. He described appellant as a "very good worker" who "identified well" with the at-risk young men served by the children's home. Mr. Ivory never considered appellant a danger to any of the children he counseled.

Regarding appellant's convictions, Mr. Ivory testified that appellant made "a very unwise choice" and that appellant struggled with grief issues among other things. He believed that appellant was "an appropriate person for the [c]ourt to take a chance on" and that appellant would benefit from an alternative sentence.

After hearing the evidence, the trial court found that appellant was a Range I standard offender. The court merged appellant's conviction for the delivery of marijuana with his conviction for the sale of marijuana. The court also merged appellant's conviction for possession with intent to deliver marijuana with his conviction for possession with intent to sell marijuana. The trial court found as a sentence enhancement factor that appellant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range and gave that enhancement factor great weight.[2] The court further found as an enhancement factor that appellant was the leader in the commission of an offense involving two or more criminal actors.[3] The court found as mitigating factors that appellant's criminal conduct neither caused nor threatened serious bodily injury, that appellant was a good worker and "very educated," and that appellant had community support.[4]

---

[2] *See* Tenn. Code Ann. § 40-35-114(1) (2010).

[3] *See id.* § 40-35-114(2).

[4] *See id.* § 40-35-113(1), (13).

The trial court sentenced appellant to serve two years in the Tennessee Department of Correction for sale of marijuana and two years for possession of marijuana with intent to sell. The court sentenced appellant to eleven months and twenty-nine days in the county jail for the drug paraphernalia conviction. The court ordered that appellant serve his two-year sentences concurrently with each other and consecutively to the eleven months and twenty-nine days sentence, for a total effective sentence of two years, eleven months, and twenty-nine days.

## II. Analysis

On appeal, appellant challenges his convictions and sentences. Specifically, he asserts that the trial court erred when it did not rule on his motion to suppress evidence and that the court erred when sentencing him.

### A. Motion to Suppress

Appellant argues that the "trial court committed plain error when it failed to rule on [his] motion to suppress when presented with an opportunity at trial to do so." The State responds that appellant has waived appellate review of this issue by his failing to file a motion for new trial.

Initially, we note that appellant, in fact, did not file a motion for new trial. "[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence . . . unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived." Tenn. R. App. P. 3(e). "However, the waiver provision does not apply when the issue, if found to be meritorious, would result in the dismissal of the prosecution against the accused." *State v. Scott G. Clevenger*, No. E2007-00298-CCA-R3-CD, 2008 WL 588862, at *3 (Tenn. Crim. App. Mar. 5, 2008) (citing *State v. Keel*, 882 S.W.2d. 410, 416 (Tenn. Crim. App. 1994)). The jury convicted appellant of various drug charges based on marijuana and drug paraphernalia found by authorities and the controlled transaction completed by Mr. Tubbs. Appellant attempted to exclude this evidence with his motion to suppress. If the trial court had ruled on the motion to suppress and found it to be meritorious, there would have been no evidence with which to sustain the convictions, and the prosecution against appellant would have been dismissed. Accordingly, the waiver provision does not apply in appellant's case, and we will address the merits of the issue.

On April 6, 2011, appellant filed a motion to suppress all evidence seized, including statements, confessions, or admissions, as a result of his allegedly unlawful arrest. On the date the trial court set the hearing on the motion to suppress, the parties appeared to have successfully negotiated a plea agreement, and the trial court did not hear the motion.

-8-

Appellant ultimately rejected the plea agreement, the case proceeded to trial, and the court never heard the motion to suppress. During the trial, appellant raised the issue of the motion to suppress based on Investigator Davidson's "equivocal testimony." The trial court declined to consider appellant's motion to suppress, noting that they were in the middle of the trial and that appellant never requested a hearing on the motion during the time between appellant's rejection of the plea agreement and the trial date.

Appellant contends that the trial court erred when it "was explicitly given the opportunity to rule on [appellant's] [m]otion to [s]upress[] and chose not to rule." We disagree. A motion to suppress evidence must be made prior to trial. Tenn. R. Crim. P. 12(b)(2)(C). "The court shall decide each pretrial motion before trial unless it finds good cause to defer a ruling until trial or after a verdict." Tenn. R. Crim. P. 12(e). The rule requiring pretrial motions to be raised and heard before trial applies "when a claim of a constitutional right is involved whose violation would lead to suppression of evidence." *State v. Goss*, 995 S.W.2d 617, 628 (Tenn. Crim. App. 1998) (citing *State v. Foote*, 631 S.W.2d 470, 472–73 (Tenn. Crim. App. 1982)). If a defendant fails to raise the suppression issue pretrial, the issue is deemed waived absent a showing that good cause merits relief. Tenn. R. Crim. P. 12(f).

As this court previously noted,

[t]here are many valid reasons underlying the practice of requiring pre-trial motions. It avoids interrupting a trial in progress with auxiliary inquiries which break the continuity of the jury's attention and it avoids inconveniencing jurors and witnesses by requiring them to stand by idly while the court hears a motion to suppress. The practice prevents mistrials from the jury's exposure to unconstitutional evidence. It is to the advantage of both the prosecution and defense to know prior to trial whether certain items will or will not be admitted into evidence. Granting the pre-trial motion might result in abandonment of the prosecution; if the pre-trial motion is denied, then the defendant may either plead guilty and gain whatever concession might be obtained from the State, or change his trial strategy.

Further, the consideration of a motion to suppress after the beginning of the trial can adversely affect the State's right to appeal an adverse ruling. When a pre-trial judgment is adverse to the State, the State's right to appeal is preserved. Jeopardy attaches when a jury is sworn. This prevents an appeal by the State from a judgment suppressing evidence rendered after the beginning of a trial. Rule 12(e) expressly places a duty on a trial judge to determine the merits of a motion before trial.

-9-

*Feagins v. State*, 596 S.W.2d 108, 110 (Tenn. Crim. App. 1979) (footnote and internal citations omitted).

Although appellant filed his motion to suppress before trial, he essentially abandoned the motion because he intended to plead guilty. Appellant decided to not plead guilty and failed to request a hearing on the motion to suppress between the original motion hearing date and July 13, 2011, when he revisited the issue during trial. Appellant does not assert any "good cause" that would merit relief. The only reason offered by appellant for failing to have the court hear the motion before trial was that appellant intended to accept the State's plea offer. Accordingly, we conclude that the trial court did not err when it declined to hear appellant's motion to suppress during trial. Appellant is not entitled to relief on this issue.

### B. Sentencing

Appellant further argues that the trial court "failed to implement the purpose and intent of [Tennessee Code Annotated section] 40-35-102" and that the record does not adequately support the trial court's findings regarding sentencing. He asserts that the trial court should have granted him an alternative sentence. In addition, appellant contends that the trial court erred by ordering that appellant serve his misdemeanor sentence consecutively to his sentences for his felony convictions.

In determining an appropriate sentence, a trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant makes on his own behalf as to sentencing; and (8) the potential for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -113, -114, -210(b) (2010). In addition, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(4) (2010).

When imposing a sentence within the appropriate range of punishment for a defendant,

> the court shall consider, but is not bound by, the following advisory sentencing guidelines:

(1)     The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2)     The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c) (2010). From these principles, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" *State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008) (quoting Tenn. Code Ann. § 40-35-210(d)).

Pursuant to the 2005 amendments, the Sentencing Act abandoned the statutory presumptive minimum sentence and rendered enhancement factors advisory only. *See* Tenn. Code Ann. §§ 40-35-114, 40-35-210(c) (2010). The 2005 amendments set forth certain "advisory sentencing guidelines" that are not binding on the trial court; however, the trial court must nonetheless consider them. *See id*. § 40-35-210(c). Although the application of the factors is advisory, a court shall consider "[e]vidence and information offered by the parties on the mitigating and enhancement factors in §§ 40-35-113 and 40-35-114." *Id*. § 40-35-210(b)(5). The trial court must also place on the record "what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, to ensure fair and consistent sentencing." *Id*. § 40-35-210(e). The weighing of mitigating and enhancing factors is left to the sound discretion of the trial court. *Carter*, 254 S.W.3d at 345. The burden of proving applicable mitigating factors rests upon appellant. *State v. Mark Moore*, No. 03C01-9403-CR-00098, 1995 WL 548786, at *6 (Tenn. Crim. App. Sept. 18, 1995). The trial court's weighing of the various enhancement and mitigating factors is not grounds for reversal under the revised Sentencing Act. *Carter*, 254 S.W.3d at 345 (citing *State v. Devin Banks*, No. W2005-02213-CCA-R3-DD, 2007 WL 1966039, at *48 (Tenn. Crim. App. July 6, 2007), *aff'd as corrected*, 271 S.W.3d 90 (Tenn. 2008)).

When a trial court orders a sentence involving confinement, the court should consider whether: (A) "confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;" (B) "confinement is necessary to avoid depreciating the seriousness of the offense" or to "provide an effective deterrence to others likely to commit similar offenses;" or (C) less restrictive measures have been frequently or recently applied to defendant unsuccessfully. Tenn. Code Ann. § 40-35-103(1) (2010).

When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). "[T]he abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." *State v. Caudle*,388 S.W.3d 273, 278-79 (Tenn. 2012). This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. If a trial court misapplies an enhancing or mitigating factor in passing sentence, said error will not remove the presumption of reasonableness from its sentencing determination. *Id.* at 709. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See Carter*, 254 S.W.3d at 346. The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2010), Sentencing Comm'n Cmts.; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

The trial court did not abuse its discretion by imposing concurrent two-year sentences for the felony convictions. In sentencing appellant, the trial court considered the facts and circumstances of the case, noting that appellant possessed a pound of marijuana that he had packed for resale in individual bags, along with digital scales and other paraphernalia. The trial court found that although appellant did not have many criminal convictions, he had an extensive record of criminal activity that included the use of marijuana since he was thirteen years old, a charge for simple possession of marijuana, and two misdemeanor convictions.[1] The court also considered appellant's admission that he began selling marijuana while in college. The trial court stated that it had no question that appellant was a drug dealer. The trial court also applied the enhancement factor that appellant was the leader in the commission of the offense.

Appellant contests the trial court's failure to apply as a mitigating factor that he "was suffering from a mental or physical condition that significantly reduced [his] culpability for the offense; however, the voluntary use of intoxicants does not fall within the purview of this factor." Tenn. Code. Ann.§ 40-35-113(8) (2010). Appellant contends that he is addicted to marijuana and his use is not volitional. Even if this were true and the mitigating factor was

---

[1] While the record is far from clear, appellant's pre-sentence report apparently indicates that he was charged with simple possession of marijuana in South Carolina in 1998 and forfeited his bond of $189, which was paid to the City of North Augusta, South Carolina's treasury as a fine. The record is clear that he was convicted of DUI and contributing to the delinquency of a minor in Georgia.

-12-

applicable, "a trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706. Appellant's sentence fell within the appropriate range, and the trial court carefully considered the evidence, the statutory enhancement and mitigating factors, and the purposes and principles of sentencing when imposing appellant's sentences. The trial court did not wholly depart from the sentencing act, and appellant is not entitled to relief on this issue.

Further, the court did not abuse its discretion by denying appellant probation or any other alternative sentence. The trial court found that appellant had an extensive record of criminal activity based on his continued use of marijuana and his selling marijuana. The court considered appellant's potential for rehabilitation, stating that appellant had been before other courts on charges relating to drugs and alcohol but "continued down that path" instead of changing his ways. The court did not find that appellant could abide by the terms of probation, specifically refraining from the use of drugs, considering his long history of daily marijuana use. The court stated that granting appellant an alternative sentence would unduly depreciate the seriousness of the offenses by sending a message to the community that "you can go out and sell drugs and if you get caught, not a big deal, you are going to get probation." The court emphasized that appellant was a drug dealer, not merely a drug user. The record shows that appellant admittedly engaged in drug use for many years and also sold drugs. Thus, the evidence presented supports the trial court's decision, and the trial court did not err in ordering appellant to serve the sentence in confinement.

Regarding the trial court's ordering that appellant serve his misdemeanor sentence consecutively to his felony sentences, the determination by the trial court of consecutive or concurrent sentencing should not be disturbed on appeal absent an abuse of discretion. *State v. Blouvet*, 965 S.W.2d 489, 495 (Tenn. Crim. App. 1997). A trial court may, in its discretion, order sentences to be served consecutively to each other if it finds one of seven criteria by a preponderance of the evidence. Tenn. Code Ann. § 40-35-115(b) (2010). "These criteria are stated in the alternative; therefore, only one need exist to support the appropriateness of consecutive sentencing." *State v. Mickens*, 123 S.W.3d 355, 394 (Tenn. Crim. App. 2003). Imposition of consecutive sentences must be "justly deserved in relation to the seriousness of the offense." Tenn. Code Ann. § 40-35-102(1). The length of the resulting consecutive sentence must be "no greater than that deserved for the offense committed." *Id*. § 40-35-103(2).

In this case, the trial court ordered that appellant serve his sentence for his felony convictions consecutively to his misdemeanor sentence because of appellant's extensive history of possession, use, and sale of marijuana. *See id*. § 40-35-115(2) (allowing for consecutive sentencing if the trial court finds by a preponderance of the evidence that

"defendant is an offender whose record of criminal activity is extensive.") The record supports this finding. The evidence at trial and the sentencing hearing established that appellant had a history of criminal behavior because of his ongoing drug use. He also had two prior criminal convictions. Appellant admitted to being addicted to drugs since he was thirteen years old. The record further shows that appellant sold drugs. Appellant's selling drugs and daily use of illegal drugs is ongoing criminal activity. As the trial court noted, appellant's possessing, using, and selling marijuana are serious offenses in and of themselves; however, considering that appellant was an authority figure for at-risk youth, these crimes are more serious. Thus, we cannot conclude that the trial court erred by ordering that appellant serve his misdemeanor sentence consecutively to his felony sentences.

The trial court sentenced appellant "within the appropriate range, and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *See Bise* 380 S.W.3d at 709-10. Thus, we will not disturb appellant's sentences. Appellant is not entitled to relief.

## CONCLUSION

Based on the foregoing, we affirm the judgments of the trial court.

_____
ROGER A. PAGE, JUDGE